UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALEXANDER JACOBSON (#535678)                            CIVIL ACTION

VERSUS

DARREL VANNOY, ET AL.                                   NO. 15-0783-JJB-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 8, 2017.

                                              **ERIN WILDER-DOOMES**
                                              **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALEXANDER JACOBSON (#535678)                     CIVIL ACTION

VERSUS

DARREL VANNOY, ET AL.                            NO. 15-0783-JJB-EWD

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the Motions to Dismiss of Defendants Darrel Vannoy (R. Doc. 12), Kenneth Booty (R. Doc. 40) and Errol Matthews (R. Doc. 49). These Motions are opposed.

*Pro se P*laintiff, an inmate confined at Dixon Correctional Institute ("DCI"), Jackson, filed this action pursuant to 42 U.S.C. § 1983 against Warden Darrel Vannoy and unidentified correctional officers, complaining that his constitutional rights were violated on June 18, 2015, when he was attacked without warning by correctional officers, grabbed about the throat and forcibly thrown to the ground, causing him to sustain injury. Plaintiff has since amended his Complaint to identify Major Mark Allen (originally mis-identified as "Major Harris"), Lt. Col. Errol Matthews, Ass't Warden Kenneth Booty and Col. John Bell as defendants herein.[1]

In the instant Motions, Defendants Vannoy, Booty and Matthews seek dismissal of Plaintiff's claims asserted against them on several grounds, among which is the contention that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

---

1   Defendant Mark Allen has only recently been served and has not participated in the instant motions. In addition, Defendant John Bell has not yet been served herein.

*Bell Atlantic Corp. v. Twombly, supra*, at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id*. at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed pro se is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id*. (citation omitted).  Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct."  *Ashcroft v. Iqbal, supra*, 556 U.S. at 678.  The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement."  *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

Applying the foregoing standard to Plaintiff's allegations asserted against the appearing defendants, the Court concludes that Defendants' motions should be granted.  In his Complaint, as amended, Plaintiff alleges that on the morning of June 18, 2015, he received his usual medications from the pill dispensary and was returning down the walk when he observed a busload of security

officers arriving at DCI from the Louisiana State Penitentiary ("LSP"). According to Plaintiff, these officers were led by Defendant Mark Allen from LSP and many of them were drinking coffee or energy drinks and appeared to be experiencing a "caffeine high." As Plaintiff was then walking with other inmates through the sally port, he heard an officer, who he identifies as being Defendant Allen, yell out, "take him down … he's trying to swallow the dope," whereupon Plaintiff was "almost immediately" grabbed around the neck from behind by an unidentified black officer who choked plaintiff, preventing him from swallowing, while several other officers proceeded to lift Plaintiff up and slam him to the concrete. *See* R. Doc. 13 at p. 1. Plaintiff asserts that "everything happened so fast." *Id*. at p. 2. According to Plaintiff, he then spit out one of the 7 or 8 pills he takes every morning, and he complains that the offending officers referred to this pill as being an unidentified or unknown substance whereas it was in fact medication that was properly prescribed to Plaintiff every day and was identified as such by a passing pill-call officer. *Id*. Plaintiff further complains that a supervising DCI officer, Defendant Errol Matthews, who was also present at the scene, did nothing to intervene or prevent the use of force precipitated by Defendant Allen. *See* R. Doc. 13-2 at p. 1. Plaintiff asserts that, as a result of the foregoing, Defendants Allen and Matthews are liable for having been deliberately indifferent to Plaintiff's safety and are therefore responsible for the resulting use of force that Plaintiff claims was unreasonable under the circumstances.

In addition to the foregoing, Plaintiff alleges that he thereafter submitted an administrative grievance to prison officials on or about July 16, 2015 regarding the aforementioned events and was subsequently called to the office of Col. John Bell to discuss the grievance. According to Plaintiff, he was unable to talk at that time because of injuries to his throat, and Col. Bell stated to Plaintiff that he would contact the medical department for a follow-up evaluation. Plaintiff complains, however, that no follow-up treatment or evaluation was forthcoming. Approximately two or three weeks later, on September 14, 2015, Plaintiff allegedly received a First Step Response form signed by Defendant Kenneth Booty, dated September 3, 2015, that stated simply that Plaintiff's grievance had "no merit."

According to Plaintiff, he then executed and submitted a form *on the same date* signifying his dissatisfaction with the First Step finding and requesting further review of his grievance at the Second Step of the administrative process. Plaintiff complains, however, that his Second Step grievance was returned to him shortly thereafter and was rejected, purportedly because Plaintiff had not requested a Second Step review within five days as required by prison rules. Plaintiff attests, however, that his request for a Second Step review was in fact timely, and he infers that Defendant Booty falsified Plaintiff's paperwork so as to make it appear that Plaintiff's request for review was submitted late. Plaintiff asserts that this was an effort on Defendant Booty's part to interfere with Plaintiff's administrative grievance and to thereby prevent his access to the courts. Plaintiff further asserts that, by denying Plaintiff's administrative grievance at the First Step on September 3, 2015, which grievance had made reference to Plaintiff's injuries and had requested "general and equitable relief," Defendant Booty failed to ensure that Plaintiff received appropriate medical care and caused such care to be delayed or denied.

In response to Plaintiff's allegations, Defendants first seek dismissal of the claims asserted against them in their official capacity for monetary damages. In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacities for monetary damages is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their

individual capacities remains theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to Plaintiff's claims that are not barred by the Eleventh Amendment, the Court next addresses the moving Defendants' assertion that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that any of them participated in a violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims asserted against the moving Defendants, the Court concludes that Defendants' Motions to Dismiss should be granted, dismissing Plaintiff's claims asserted against them in this case. First, with regard to Defendant Darrel Vannoy, who is alleged to have been the Warden at DCI at the time of the incidents complained of,

Defendant Vannoy asserts that Plaintiff has failed to adequately allege the personal involvement of Defendant in the events alleged. In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard in connection with Plaintiff's claims, it appears that Plaintiff has failed to sufficiently allege that Defendant Vannoy has undertaken any action which may be characterized as a violation of Plaintiff's constitutional rights. Specifically, Plaintiff makes no factual allegation in the Complaint, as amended, that Warden Vannoy was present or had any personal involvement in the events of June 18, 2015. To the contrary, the only factual allegation provided relative to Defendant Vannoy is that Plaintiff sent Defendant a letter (and received no response) inquiring about reinstating Plaintiff's administrative grievance that had allegedly been wrongly rejected as untimely. *See* R. Doc. 1 at p. 7. This allegation is not sufficient to establish liability on the part of Defendant Vannoy. The law is clear that inmates have no constitutional right to have their

administrative grievances investigated, responded to, or favorably resolved. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Accordingly, Plaintiff's claim asserted against Defendant Vannoy is without legal or factual foundation, and Defendant Vannoy is entitled to judgment as a matter of law.

Turning to Plaintiff's claim asserted against Defendant Errol Matthews, Plaintiff asserts that Defendant Matthews was the ranking DCI supervisory official in the area when Defendant Mark Allen allegedly directed security officers to "take [Plaintiff] down" on June 18, 2015. According to Plaintiff, Defendant Matthews was not directly or personally involved in the take-down but observed LSP security officers arriving at DCI drinking coffee and energy drinks and observed that they were acting as if they were on a "caffeine high." According to Plaintiff, this should have placed Defendant Matthews on notice of a potentially dangerous situation. In addition, Plaintiff complains that Defendant Matthews stood by and did nothing to intervene and protect Plaintiff from the alleged excessive force that subsequently occurred when Defendant Allen ordered the take-down of Plaintiff.

Plaintiff's allegations against Defendant Matthews invoke Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment in the form of exposure to conditions posing a substantial risk of serious injury at the hands of security officers or other inmates. Characterizing such a claim as one of "bystander liability," the Fifth Circuit has concluded that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Further elucidating upon this claim, the Fifth Circuit has reiterated that "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), *quoting Randall v. Prince George's County., Md.*, 302 F.3d 188, 204 (4th Cir. 2002). *See also Kitchen v.*

*Dallas County, Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). A reasonable opportunity to intercede and prevent the constitutional violation is "[t]he focus of the bystander-liability inquiry." *Malone v. City of Fort Worth, Tex.*, 2014 WL 5781001, *16 (N.D. Tex. Nov. 6, 2014). In resolving whether a plaintiff has sufficiently alleged a bystander liability claim, the Court also considers whether an officer has acquiesced in the alleged constitutional violation. *Whitley v. Hanna, supra*, 726 F.3d at 646, *citing Hale v. Townley, supra*, 45 F.3d at 919. A bystander officer's liability is analyzed under a "deliberate indifference standard," that requires a plaintiff to demonstrate that the officer actually knew of an excessive risk to the inmate's safety and disregarded that risk. *Oby v. Sander*, 2015 WL 4496426, *3 (N.D. Miss. July 23, 2015). Mere negligence or even gross negligence is not enough. *See E.A.F.F. v. Gonzalez*, 600 Fed. Appx. 205, 210 (5th Cir.), *cert. denied*, ___ U.S. ___, 135 S.Ct. 2364 (2015). The officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

  Applying the foregoing standard to Plaintiff's claim asserted against Defendant Matthews, the Court concludes that Plaintiff has failed to allege facts sufficient to warrant a finding of liability on the part of Defendant Matthews. As acknowledged by Plaintiff in his amended Complaint, R. Doc. 13, the events that he complains of "happened so fast" that there was little time for anyone to react. According to Plaintiff, after Defendant Allen yelled, "take him down … he's trying to swallow the dope," Plaintiff was grabbed "almost immediately" and thrown to the ground by security officers. Plaintiff further acknowledges in a later amendment to the Complaint, R. Doc. 50, that the situation was such that it "never allowed but a brief moment to respond." It is clear from Plaintiff's allegations, therefore, that the attending security officers believed Plaintiff to be in possession of some form of contraband, and Defendant Allen undertook swift action to attempt to prevent Plaintiff from swallowing the evidence of the offense. This action was apparently successful because Plaintiff

acknowledges that he spit out a pill immediately after the take-down. Plaintiff has not alleged that Defendant Matthews, who neither ordered nor participated in the take-down, had advance notice that the take-down would occur, nor that Defendant Matthews could have known the amount of force that would be utilized by other officers in effecting the take-down. Nor has Plaintiff sufficiently alleged that the excessive force continued after the take-down such that Defendant Matthews had an obligation to intervene. To the contrary, Plaintiff acknowledges that "the man choking [him] let go" (R. Doc. 13 at p. 1), that he was thereafter placed in restraints and escorted to lockdown (R. doc. 1 at p. 9), and that the entire episode lasted no more than approximately thirty (30) seconds (R. Doc. 58 at p. 1). Accordingly, Defendant Matthews may not be found liable for the resulting events that happened with such acknowledged speed. There is nothing in Plaintiff's allegations, therefore, that suggests that Defendant Matthews actually perceived a substantial risk of serious harm to Plaintiff's safety,[2] had a reasonable opportunity to intervene and prevent that harm before it happened – in light of the speed with which events occurred – and made an intentional decision not to act. Accordingly, Plaintiff has failed to sufficiently state a claim of constitutional dimension relative to Defendant Matthews.

Turning to Plaintiff's claim asserted against Defendant Kenneth Booty, the Court again finds that there is an insufficient legal or factual basis for the imposition of liability against this Defendant. The extent of Plaintiff's factual assertion against Defendant Booty is that without interviewing Plaintiff or looking at Plaintiff's medical records, Defendant Booty denied the administrative grievance that Plaintiff filed on July 16, 2015 and thereafter falsified or altered Plaintiff's request for a Second Step review of the grievance to make it appear that the Second Step request was untimely. In addition,

---

2   The mere fact that Defendant Matthews may have observed the LSP officers drinking coffee and energy drinks before the incident does not lead to a finding by the Court that Defendant Matthews should have been aware of a potentially dangerous situation. Further, whereas Plaintiff refers to a purported video recording that would show the failure to act of Defendant Matthews, Defendants have responded to Plaintiff's discovery that no known video evidence exists relative to the events in question. *See* R. Doc. 48.

Plaintiff suggests that Defendant Booty's denial of Plaintiff's grievance had the effect of denying or delaying Plaintiff's access to medical care for injuries resulting from the events of June 18, 2015.

First, with regard to Plaintiff's claim regarding the denial of Plaintiff's administrative grievance on September 3, 2015, allegedly without an adequate investigation, this claim clearly fails to state a claim of constitutional dimension. As previously noted, the law is clear that an alleged failure to investigate or properly respond to a prisoner's administrative grievance is not a constitutional violation, and no liability may attach as a result of such failure. *See Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). Thus, Plaintiff may not be heard to complain in this case regarding the manner in which his administrative grievance was investigated or resolved, and there is no constitutional right inherent in such a claim. Second, with regard to Plaintiff's complaint that Defendant Booty allegedly altered or falsified Plaintiff's Second Step grievance request so that it was later rejected as untimely, thereby preventing Plaintiff from fully exhausting administrative remedies as mandated for the right to proceed in federal court, *see* 42 U.S.C. § 1997e(a), this claim, if true, would implicate Plaintiff's First Amendment right to access to the courts. In this regard, a substantive right of access to the courts has long been recognized. *Lewis v. Casey*, 518 U.S. 343, 347 (1996), *citing Bounds v. Smith*, 430 U.S. 817, 821 (1977). Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances. *Driggers v. Cruz*, 740 F.3d 333 (5th Cir. 2014). In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts. Thus, for example, prison officials may not block or refuse to transmit, through procedural devices or otherwise, the transmission of legal documents that prisoners wish to send to the courts. Nor can they take other actions – such as confiscating or destroying legal papers – that would have a similar effect. *See Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994), *citing Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). Notwithstanding, and most importantly in the instant case, in order to prevail on a claim of interference with access to the courts, an inmate

claimant must be able to show that he has suffered some cognizable legal prejudice or detriment as a result of a defendant's actions. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Applying the foregoing standard, it appears clear Plaintiff's access-to-courts claim should be rejected. Even assuming that Defendant Booty in fact altered Plaintiff's Second Step review request so as to make it appear untimely, which the Court does not find or address, Plaintiff has suffered no prejudice as a result of Defendant Booty's conduct. None of the defendants in this case have asserted, as a defense to Plaintiff's claims in this proceeding, that he has failed to exhaust administrative remedies relative to his claims as mandated by 42 U.S.C. § 1997e. Accordingly, this Court has addressed the substantive claims asserted by Plaintiff in this proceeding and has not refused to consider any claim because of an asserted failure to exhaust administrative remedies in connection therewith. Therefore, inasmuch as a showing of cognizable legal detriment or prejudice is a prerequisite for a claim of interference with access to the courts, *Lewis v. Casey, supra*, 518 U.S. at 351, Plaintiff's claim in this regard must likewise be rejected because he has not shown that he suffered any prejudice or legal detriment because of the alleged mis-handling of his administrative grievance by Defendant Booty.

Finally, Plaintiff suggests that, by denying Plaintiff's grievance on September 3, 2015, Defendant Booty in some way caused Plaintiff's medical care to be delayed or denied. In this regard, Plaintiff has failed to provide sufficient factual detail to support a claim of deliberate medical indifference. In order to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim

of deliberate medical indifference.  *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006).   Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340, 344 (5th Cir. 2016).   Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).   A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it."   *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.   The deliberate indifference standard sets a very high bar.  Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*.

Applying this standard, it is clear that Plaintiff has failed to allege facts sufficient to support a claim of deliberate medical indifference against Defendant Booty.   All that Plaintiff has alleged in this regard is that Defendant Booty reviewed and denied Plaintiff's administrative grievance relative to the events of June 18, 1915, which grievance, according to Plaintiff, included the "assertion of a serious medical issue."  *See* R. Doc. 55 at p. at p. 1.   Plaintiff does not allege, however, that Defendant Booty is a medical officer with either the authority or the responsibility to obtain or provide medical treatment to Plaintiff or to evaluate his condition or complaints.   Further, whereas Plaintiff alleges that the referenced administrative grievance addressed a purported medical issue, a review of the grievance itself, a copy of which has been filed into the record by Defendants, *see* R. Doc. 19, does not suggest that Plaintiff was making any complaint whatever regarding his medical care.[3]   Further,

---

3   Although Plaintiff appears to complain in this case that an "original" copy of his grievance has

there are recognized procedures at DCI that inmates are instructed to use to obtain medical attention, including by making written sick-call requests to medical officers assigned to their units that result in written evaluations and referrals to physicians and specialists as warranted. Plaintiff was apparently utilizing these sick call procedures. *See* R. Doc. 55-1 at p. 1 (where Plaintiff makes reference to his "next" sick-call request). Thus, there is nothing in the record that suggests that Defendant Booty, by merely reviewing and denying Plaintiff's administrative grievance (that did not assert a medical claim), was placed on notice regarding Plaintiff's purported serious medical needs or that Defendant Booty acted so as to prevent Plaintiff from receiving care or treatment. The most that Plaintiff suggests in this regard is that because Defendant Booty is a high-ranking official at DCI, his rejection of Plaintiff's grievance, in some unspecified way, led to a failure by prison medical officers to take Plaintiff's medical complaints seriously. *See* R. Doc. 58-2 at p. 2-3. This assertion, however, is wholly speculative and entirely conclusory and is not sufficient to support a claim against Defendant Booty. Accordingly, on the facts alleged, there is no basis for the imposition of liability against this Defendant.

## **RECOMMENDATION**

It is recommended that the Motions to Dismiss of Defendants Darrel Vannoy, Kenneth Booty and Errol Matthews (R. Docs. 12, 40 and 49), be granted, dismissing Plaintiff's claims asserted against these Defendants, with prejudice, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on February 8, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

never been produced, the copy of the grievance in the record is certified to be a true and complete copy thereof.