UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALEXANDER JACOBSON (#535678)                    CIVIL ACTION

VERSUS

DARREL VANNOY, ET AL.                            NO. 15-0783-JJB-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 27, 2017.

                                     ERIN WILDER-DOOMES
                                     UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ALEXANDER JACOBSON (#535678)**             **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                   **NO. 15-0783-JJB-EWD**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss of Defendant Mark Allen (R. Doc. 69). This Motion is not opposed.

*Pro se P*laintiff, an inmate confined at Dixon Correctional Institute ("DCI"), Jackson, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Darrel Vannoy and unidentified correctional officers – subsequently identified by amendment as Major Mark Allen, Lt. Col. Errol Matthews and Ass't Warden Kenneth Booty – complaining that his constitutional rights were violated on June 18, 2015, when he was attacked without warning by correctional officers, grabbed about the throat, and forcibly thrown to the ground, causing him to sustain injury. Plaintiff also complains that Defendant Booty was deliberately indifferent to Plaintiff's safety and serious medical needs after the incident. Pursuant to a prior Ruling in this case (R. Doc. 71), Plaintiff's claims asserted against Warden Darrel Vannoy, Lt. Col. Errol Matthews, and Ass't Warden Kenneth Booty have been dismissed.[1]

---

1   Plaintiff has also attempted to amend his Complaint to assert claims against additional defendants herein, specifically Col. John Bell and unidentified X, Y and Z defendants. The Court, however, will recommend that the proposed amendment be rejected as untimely. Pursuant to a Scheduling Order dated March 11, 2016 (R. Doc. 8), the Court provided that "[t]he deadline for

In the instant Motion, Defendant Allen first seeks dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's claim asserted against Defendant Allen in his official capacity for monetary damages. In this regard, Defendant Allen is correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21

---

seeking leave of Court to amend the Complaint shall be ninety (90) days from the date of the defendants' first appearance (filing of an answer or motion)." Plaintiff subsequently timely sought and obtained leave to amend his Complaint on several occasions. *See* R. Docs. 13, 16 and 23. *See also* R. Docs. 39 and 63 (motion for leave to amend denied). Whereas Plaintiff made reference in several of these amendments to actions allegedly taken by Col. John Bell, *see* R. Docs. 13-3 and 16, Plaintiff made no timely request that Col. Bell be added as a defendant. Further, as for the "X, Y, Z" individuals, although the factual allegations in Plaintiff's original Complaint reflected his contention and awareness that certain security officers, whose identities were unknown to him, had participated in the events of which he complained, he made no timely request for leave to amend his Complaint to add such "X, Y, Z" persons as defendants herein. Instead, Plaintiff waited approximately six and seven months, respectively, after the initial appearance (Motion to Dismiss) filed by Defendant Darrel Vannoy in April, 2016, *see* R. Doc. 12, to file additional proposed "Amending Complaints," *see* R. Docs. 55 and 58, wherein he sought to add Col. Bell and the unidentified "X, Y, Z … assailants" as defendants. The Court further notes that not only were these proposed amendments untimely, but they were not accompanied by motions for leave of Court to file same. Finally, whereas Plaintiff attributes his failure to add the "unknown assailants" as defendants herein to a failure by Defendants to provide adequate responses to discovery and/or mandatory initial disclosures, the Court does not find that this justification constitutes good cause for Plaintiff's untimeliness. Specifically, the formal written discovery filed by Plaintiff in this matter did not request the identities of other participants in the events of June 18, 2015 and, pursuant to Fed. R. Civ. P. 26(a)(1)(B), Defendants were not required to submit mandatory initial disclosures in this case. *See* R. Doc. 61. Nonetheless, Defendants did comply with an Order of this Court and file into the record on June 7, 2016 documents deemed pertinent to Plaintiff's claims, s*ee* R. Doc. 19, and these documents reflect Defendants' contention that the identities of the persons directly involved in the "take down" of Plaintiff on June 18, 2015 were Major Mark Allen (already named as a defendant herein) and an individual identified as Lt. Col. Thompson. *See* R. Docs. 19-3 and 19-5. Nonetheless, Plaintiff did not timely seek leave of Court thereafter to add Lt. Col. Thompson as a defendant. Based upon this chronology of events, the Court finds Plaintiff's attempt to add Col. John Bell and the "X, Y, Z … assailants" as defendants, by filing proposed amending complaints without requesting leave in October and December, 2016, respectively, to be untimely.

(1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, Plaintiff's claim asserted against Defendant Allen in his official capacity for monetary damages is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendant Allen in his individual capacity remains theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29.

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendant Allen next asserts, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*.

at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed pro se is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

As pertinent to Plaintiff's claims asserted against Defendant Allen, Plaintiff alleges in his Complaint, as amended, that on the morning of June 18, 2015, he received his daily medications from the pill dispensary and was returning down the walk when he observed a busload of security officers arriving at DCI from the Louisiana State Penitentiary ("LSP"). According to Plaintiff, these officers were led by Defendant Mark Allen from LSP and many of them were drinking coffee or energy drinks and appeared to be experiencing a "caffeine high." As Plaintiff was then walking with other inmates through the sally port, he heard an officer, who he identifies as being Defendant Allen, yell out, "take him down … he's trying to swallow the dope," whereupon Plaintiff was "almost immediately" grabbed around the neck from behind by an unidentified black officer who choked plaintiff, preventing him from swallowing, while several other officers

proceeded to lift Plaintiff up and slam him to the concrete.  *See* R. Doc. 13 at p. 1.  Plaintiff asserts that "everything happened so fast," *id*. at p. 2, "within 3-5 seconds," R. Doc. 50 at p. 2, ""never allow[ing] but a brief moment to respond," *id*., causing him to spit out one of the 7 or 8 pills he takes every morning.  Plaintiff asserts that, as a result of the foregoing, Defendant Allen is liable for having been deliberately indifferent to Plaintiff's safety by precipitating the unreasonable use of force against him and by failing to intervene and prevent the force as it occurred.

In response to Plaintiff's allegations, Defendant Allen asserts that he is entitled to qualified immunity in connection with Plaintiff's claims.  Specifically, Defendant Allen contends that Plaintiff's allegations are insufficient to establish that Defendant Allen participated in a violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendant's conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly

established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted.  *Id.* at 202.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims asserted against Defendant Allen, the Court concludes that Defendant Allen's Motion to Dismiss should be granted, dismissing Plaintiff's claims asserted against him in this case.  In this regard, Plaintiff asserts that Defendant Allen was in charge of the LSP security officers who were arriving at DCI. According to Plaintiff, the officers were drinking coffee and energy drinks and acting as if they were on a "caffeine high," and Plaintiff asserts that this should have placed Defendant Allen on notice of a potentially dangerous situation.  Plaintiff alleges that Defendant Allen then observed Plaintiff placing pills in his mouth and shouted out an order for a take-down of Plaintiff because Defendant Allen believed that Plaintiff was attempting to ingest contraband.  Plaintiff complains that Defendant Allen then stood by and did not intervene and protect Plaintiff from the alleged excessive force that subsequently occurred.

Plaintiff's allegations against Defendant Allen may be seen to invoke Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment in the form of excessive force and/or a failure to protect Plaintiff from a substantial risk of serious injury at the hands of other security officers.  With regard to the exercise of excessive force, it has been found, in the context of a use of force by prison officials in responding to a prison disturbance or incident, that the pivotal question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing pain."  *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992), *citing Whitley v. Albers*, 475 U.S. 312, 320 (1986).  Further, it has been recognized in this context that prison officials must often make their decisions "in haste, under pressure, and frequently without the luxury of a second chance."  *Id.*   Secondly, in the

context of a failure-to-protect claim, it has been recognized that under certain circumstances, prison officials may face potential liability for standing by and allowing a fellow officer to violate an inmate's constitutional rights. Characterizing such a claim as one of "bystander liability," the Fifth Circuit has concluded that "an officer who is present at the scene and does not take reasonable measures to protect a [prisoner] from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Further elucidating upon this claim, the Fifth Circuit has reiterated that "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), *quoting Randall v. Prince George's County., Md.*, 302 F.3d 188, 204 (4th Cir. 2002). *See also Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). A reasonable opportunity to intercede and prevent the constitutional violation is "[t]he focus of the bystander-liability inquiry." *Malone v. City of Fort Worth, Tex.*, 2014 WL 5781001, *16 (N.D. Tex. Nov. 6, 2014). In resolving whether a plaintiff has sufficiently alleged a bystander liability claim, the Court also considers whether an officer has acquiesced in the alleged constitutional violation. *Whitley v. Hanna, supra*, 726 F.3d at 646, *citing Hale v. Townley, supra*, 45 F.3d at 919. A bystander officer's liability is analyzed under a "deliberate indifference standard," that requires a plaintiff to demonstrate that the officer actually knew of an excessive risk to the inmate's safety and disregarded that risk. *Oby v. Sander*, 2015 WL 4496426, *3 (N.D. Miss. July 23, 2015). Mere negligence or even gross negligence is not enough. *See E.A.F.F. v. Gonzalez*, 600 Fed. Appx. 205, 210 (5th Cir.), *cert. denied*, 135 S.Ct. 2364 (2015). The officer "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Applying the foregoing standard, the Court concludes that Plaintiff has failed to allege facts sufficient to support a finding of liability on the part of Defendant Allen.  Specifically, it is well-recognized that the presence of contraband within the prison system is a serious and pervasive threat to security and to order within each institution.  To this end, security officers from the Louisiana State Penitentiary had been summoned to DCI on the morning of June 18, 2015 for the purpose of conducting an institution-wide shakedown search of that facility and its occupants. *See* R. Doc. 50 at p. 1.  It was not then clearly unreasonable under these circumstances for the supervising officer, Defendant Allen, when he perceived an apparent attempt by Plaintiff to dispose of what appeared to be drugs, to take swift action and give a shouted command to intervene.  Plaintiff in fact acknowledges that Defendant Allen observed Plaintiff to be in possession of some kind of pills – and Plaintiff in fact concedes that he was placing one or more pills in his mouth – after which Defendant Allen admittedly yelled out, "take him down … he's trying to swallow the dope" and whereupon the events complained of occurred.[2]  Based upon these undisputed facts, this action was clearly undertaken by Defendant Allen, not solely to cause Plaintiff harm, but instead in an attempt to prevent Plaintiff from swallowing the evidence of the offense, and this action was apparently successful because Plaintiff acknowledges that he choked up a pill immediately after the take-down.  As acknowledged by Plaintiff in one of his amended

---

2   The Court notes that there is documentation in the record that reflects that appropriate pill-call procedure at DCI calls for inmates to be observed taking their prescribed medication when it is dispensed to them, not at a later time.  *See* R. Doc. 48-2 at p. 4.  In addition, there is documentation in the record that reflects that Plaintiff pleaded guilty to a disciplinary rule infraction levied against him after the incident complained of, accusing him of "aggravated disobedience" and "contraband."  *See* R. Doc. 19-5 at p. 2.

Complaints, R. Doc. 13, the events that he complains of "happened so fast" that there was little time for anyone to react. Specifically, Plaintiff was admittedly grabbed "almost immediately" and thrown to the ground by security officers. Plaintiff further acknowledges in a later pleading, R. Doc. 50, that the situation was such that it "never allowed but a brief moment to respond." Other than a conclusory assertion that LSP officers were drinking coffee and "energy drinks," Plaintiff has not sufficiently alleged that Defendant Allen had any advance notice that the take-down would involve a purported excessive degree of force. Accordingly, in the context of the excessive force claim, Plaintiff has failed to allege that Defendant Allen's actions were undertaken "maliciously and sadistically for the very purpose of causing pain," which is the pivotal inquiry in connection with such a claim. *See Hudson v. McMillian, supra*, 503 U.S. at 6. Instead, Plaintiff's allegations support only a finding that Defendant Allen was acting "in a good faith effort to maintain or restore discipline" and, as such, Defendant Allen is entitled to dismissal of Plaintiff's excessive force claim. *See Stogner v. Sturdivant*, 515 Fed. Appx. 280 n. 1 (5th Cir. 2013) ("application of force to the throat to prevent destruction of evidence is not in itself legally impermissible"), *citing United States v. Harrison*, 432 F.2d 1328, 1330 (D.C. Cir. 1970) (holding that "police did not act with undue force or brutality by grabbing defendant by the throat to prevent him from swallowing an envelope"). *See also Grant v. Police Dept., City of Natchitoches*, 2014 WL 1246353 (W.D. La. Mar. 21, 2014) ("non-lethal use of a taser to try to prevent [Plaintiff] from swallowing what turned out to be a lethal dose of cocaine was reasonable and clearly not excessive"); *Clark v. Gross*, 2016 WL 6638095 (D. S.D. Oct. 3, 2016), *and cases cited therein*.

Nor has Plaintiff sufficiently alleged that the force that continued after the take-down was for such a period of time or was undertaken in such a way that Defendant Allen had a clear

obligation or an opportunity to intervene and protect Plaintiff from the actions of other officers.³ To the contrary, Plaintiff acknowledges that the take-down was immediate and that after being thrown to the ground, "the man choking [him] let go," R. Doc. 13 at p. 1. Plaintiff asserts that he was thereafter held on the ground, with a knee to his back, for only approximately thirty (30) seconds, R. Doc. 58 at p. 1, after which he was placed in restraints and escorted to lockdown, R. Doc. 1 at p. 9. There is therefore nothing in Plaintiff's allegations that suggests to the Court that Defendant Allen actually perceived a substantial risk of serious harm to Plaintiff's safety at that point or that Defendant Allen had a reasonable opportunity, in light of the speed with which events occurred, to intervene and prevent the resulting injury and made an intentional decision not to act. Accordingly, Plaintiff has also failed to sufficiently state a claim of constitutional dimension relative to the failure-to-protect claim asserted against Defendant Allen.

## **RECOMMENDATION**

It is recommended that Plaintiff's attempt to amend his Complaint to add Col. John Bell and unidentified "X, Y, Z … assailants" as defendants herein be rejected as untimely. It is further recommended that the Motion to Dismiss of Defendant Mark Allen (R. Doc. 69), be granted,

---

3   The Court notes that there is a question in this case whether a failure-to-protect issue is presented in any event. On June 7, 2016, Defendants filed into the record of this proceeding copies of documents in their possession that are pertinent to Plaintiff's claims. *See* R. Doc. 19. Included in these documents are an Unusual Occurrence Report prepared by Defendant Thompson and a Disciplinary Report prepared by Defendant Allen. *See* R. Docs. 19-3 at p. 2 and 19-5 at p. 2. In these Reports, both Defendants state that *they* were the officers who took Plaintiff to the ground when Plaintiff was observed attempting to swallow something on June 18, 2015. If so, there is no basis for a bystander failure-to-protect claim as to these Defendants because they were directly involved in the use of force on that date.

dismissing Plaintiff's claims asserted against Defendant Allen, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 27, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**